**ROGER S. BONAKDAR #253920**
**NUTTALL & COLEMAN**
2445 CAPITOL STREET, SUITE 150
FRESNO, CALIFORNIA 93721
PHONE (559) 233-2900
FAX (559) 485-3852

Attorneys for Plaintiff,
CARLTON JONES

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLTON JONES, | 1:12-CV-01797-LJO-GSA |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR DAMAGES:** |
| v. | 1) **Racial Discrimination (Title VII)** <br> 2) **Racial Discrimination (FEHA)** <br> 3) **Failure to Prevent Racial Discrimination (FEHA)** <br> 4) **Negligent Hiring, Training, and Supervision** <br> 5) **Intentional Infliction of Emotional Distress** <br> 6) **Negligence** <br> 7) **Retaliation (FEHA)** <br> 8) **Failure to Pay Wages** <br> 9) **Harassment (FEHA)** <br> 10) **Retaliation (Title VII)** <br> 11) **Harassment (Title VII)** |
| CITY OF FRESNO, RANDY R. BRUEGMAN, individually and in his official capacity as an officer of the Fresno Fire Department, DON MACALPINE, individually and in his official capacity as an officer of the Fresno Fire Department, and DOES 1 through 25, inclusive, | |
| Defendant. | |

COMES NOW Plaintiff CARLTON JONES (hereinafter "Plaintiff"), an individual, and complains against Defendants CITY OF FRESNO (hereinafter "Fresno"), RANDY R. BRUEGMAN (hereinafter "Bruegman"), and DON MACALPINE (hereinafter "MacAlpine"), as follows:

/ / /

/ / /

/ / /

## I:

## PARTIES

**(1)** Plaintiff is, and at all times relevant to this action was, an individual residing in Tulare County, and working in and employed by Defendant Fresno.

**(2)** Plaintiff is informed and believes that Defendant Fresno is a municipal corporation and a political subdivision of the state of California with the capacity to sue and be sued. Fresno includes the Fresno city Fire Department, located in the county of Fresno.

**(3)** Plaintiff is informed and believes that both Bruegman and MacAlpine are individuals, living and working in the City and County of Fresno.

**(4)** Plaintiff is informed and believes and thereon alleges that each of the defendants, at all times mentioned herein, were and are the principal, agent, employee or representative of one or more of the other defendants, were and are acting within the course, scope, and authority of such relationship. Plaintiff is informed and believes, and thereon alleges, that each and every defendant identified herein ratified the conduct of every other defendant.

**(5)** Defendants DOES 1 through 25, inclusive, are sued under fictitious names. Plaintiff is ignorant of their true names and capacities, and will amend this Complaint by inserting their true names and capacities, when so ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictionally named defendants was, and is, responsible in some manner for the occurrences alleged herein, and that Plaintiff's damages as alleged herein were proximately caused by said defendants.

**(6)** Defendants, and each of them, are subject to suit under the California Fair Employment and Housing Act (California Govt. Code §12940, *et seq*), as well as Title VII of the Civil Rights Act of 1964, as amended 42 USC 2000(e) *et seq*.

## II.

## JURISDICTION AND VENUE

**(7)** This court has jurisdiction under 28 U.S.C. Section 1331, 28 U.S.C. Section 1343(a)(3),(4), and Title VII. This action was filed in Fresno County Superior Court on September 27, 2012, and was removed to this court pursuant to 28 U.S.C. Section 1367. Supplemental

Nuttall & Coleman
2440 Capitol St., Suite 105
Fresno, CA  93721

jurisdiction of the State claims was invoked under 28 U.S.C. Section 1367.  Venue is proper under 28 U.S.C. Section 1391(b).

### III:

### GENERAL ALLEGATIONS

**(8)** Plaintiff incorporates by reference the allegations set forth in paragraph(s) 1 through 7, set forth above, as if fully set forth hereunder.

**(9)** At all times relevant to this action, Plaintiff was an employee of Fresno—in one capacity or another with the Fresno Fire Department.  Specifically, Plaintiff began working for Fresno in and about 2002.

**(10)** Through years of hard-work, proven skills, and a commitment to excellence, Plaintiff rose through the ranks at the Fresno Fire Department, ultimately reaching the title/position of Engineer.

**(11)** In the weeks and months before earning the title of Engineer, Plaintiff went through promotion and review processes associated with the same.  During this period, there was a "shuffling" within the Fire Department, and MacAlpine acted as the de facto acting assistant fire-chief, and was purportedly vested with overseeing internal investigations. MacAlpine regularly boasted about having significant authority and "weight" with the Department and could "make or break" anyone's future within the Fresno Fire Department.

**(12)** Because of MacAlpine's status, MacAlpine oversaw and supervised Plaintiff at different times, and attendant to different matters.  In many instances, MacAlpine demonstrated animus towards Plaintiff, and treated him differently than other fire fighters. The reason for that disparate and adverse treatment is that Plaintiff is an African American. By way of example, at one point Plaintiff was provided with a department issued vehicle, and allowed to take that vehicle home in the evening so that Plaintiff would have a conveyance to use when responding to calls for service, to conduct investigations. Due to his prejudices, MacAlpine interfered with Plaintiff's issuance of the Department conveyance and told Plaintiff that although every other person in Plaintiff's position/title was issued a vehicle, Plaintiff would not be.  MacAlpine did so because Plaintiff is African American.  MacAlpine had no legitimate or appropriate reason for telling Plaintiff the

foregoing, or for engaging in the obstructive conduct relative to the issuance of the Department-issued conveyance.  The foregoing is but one example of the numerous additional interactions that Plaintiff had with MacAlpine, where Plaintiff was subjected to adverse treatment and harassment, all due to the fact that Plaintiff is African American.  Non-African American firefighters were not subject to the foregoing adverse, hostile, and discriminatory treatment complained of by Plaintiff.

**(13)    In or about 2005 or 2006, Plaintiff was riding in the back of a fire engine while his supervisor, Andy Noles, was in the front.  There was a discussion between Noles and another firefighter, Ray Banuelos, about their time at the fire academy.  Noles stated that he hated the "nigger work" they had to do at the academy.  Noles stated, "You know, stuff Black people do" in reference to the academy requirement that cadets pick up old furniture from alleyways.  Approximately six months later, Noles was promoted to Captain.**

**(14)    On or about December 5, 2006, Defendant MacAlpine prepared an Employee Evaluation Report for Plaintiff's job performance during the month of November 2006.  This report gave Plaintiff several "short of standard" ratings on job tasks, and the accompanying comments were extremely negative.  Defendant MacAlpine gave Plaintiff an overall rating of "short of standard".  On information and belief, Plaintiff had received positive monthly reports from the time his employment with the Fresno Fire Department began in 2002 until the November 2006 report, with overall ratings of "competent" from other supervisors.**

**(15)    On or about December 5, 2006, Plaintiff wrote a letter to Defendant Fire Chief Randy Bruegman notifying the Chief that during the November monthly evaluation, Defendant MacAlpine had threatened Plaintiff to resign from his Investigator position or risk being stripped of his promotion to Specialist.  Plaintiff also notified Defendant Bruegman that, as a part of the threat, Defendant MacAlpine reminded Plaintiff that he (Plaintiff) was a single father.  Plaintiff also notified Defendant Bruegman that he did not want to work where he was not welcome, and was relegated to having to**

complete the rest of his probation as a Specialist as an Engineer to escape the discrimination and harassment of Defendant MacAlpine.

**(16)** In or about 2008, Defendant Don MacAlpine made comments directed to Plaintiff that men are ranked in terms of value by their race. MacAlpine stated that White men were the most valuable, followed by Asian men. MacAlpine stated that Black men ranked the lowest in terms of their value, with women being ranked below all men. MacAlpine further stated that God intended these rankings to be the order of the world. Defendant MacAlpine would regularly "preach" his discriminatory beliefs to Plaintiff and others.

**(17)** Prior to 2009, Plaintiff was married, and was having certain personal issues with his then wife. This situation ultimately culminated in their separation, and later divorce. The marriage produced one daughter, with whom Plaintiff enjoys a close and loving relationship.

**(18)** The strained relationship between Plaintiff and his ex-wife, which caused the marriage relationship to deteriorate and their eventual divorce, also led to Tulare County authorities making contact with Plaintiff, based on certain allegations made against him, and criminal charges being instituted against Plaintiff in Tulare County. As developed below, the allegations and charges were determined to be meritless, and Plaintiff was fully exonerated relative to the same.

**(19)** Through means not definitively known by Plaintiff, Plaintiff is informed and believes that MacAlpine learned of the foregoing criminal charges, and between he and then acting Fire Chief Breugman, a decision was made to exploit the baseless arrest against Plaintiff, so as to unlawfully and unfairly terminate Plaintiff's employment with Fresno.

**(20)** In or about the first half of 2008, information was relayed to Plaintiff by headquarters notifying him that someone from a local emergency response publication wanted to interview him. Plaintiff's participation in the interview did not hinder response times or cause him to stray from his duties. When the article was published in or about late 2008, Plaintiff was harassed and questioned about the interview he gave and told he was using City property for personal gain. Defendants leveled these

5

Nuttall & Coleman
2440 Capitol St., Suite 105
Fresno, CA 93721

**allegations against Plaintiff despite the fact that a White firefighter was shown on the local news using his Fresno fire gear and fire truck to propose to his girlfriend that same day.  Employees of that station were delayed in responding to a fire because of the proposal, but the White firefighter was not disciplined.  There was also another crew of four firefighters who took a fire truck while on duty to take pictures for the same magazine which Plaintiff did who were not disciplined for their conduct.**

**(21)** Specifically, upon learning of the charges, defendant Bruegman and MacAlpine set out on an unlawful mission to terminate Plaintiff, and took steps to manufacture some reason to justify the same.  Specifically, Bruegman undertook to contact the Central California Emergency Medical Services Agency for Fresno ("CCMES" or "EMS") (and other additional outlying counties) of the fact of Plaintiff's arrest and charge, and affirmatively requested that Plaintiff's EMT certification be suspended.  Defendants did so because holding a valid EMT certificate is a part of the minimum qualifications for the position of firefighter and subsequent ranks within Fresno.

**(22)** EMS Director Dr. Jim Andrews was the person who received the request from Defendants.  According to Dr. Andrews, Plaintiff's case was the first occasion in his history as the acting Medical Director of the EMS, that a Fire Chief had contacted him regarding a criminal charge against one of his firefighters, and affirmatively requested that said firefighter's EMT certificate be suspended or revoked.  Dr. Andrews obliged Defendants' request, and immediately suspended Plaintiff's certificate.

**(23)** Once Defendants had effectuated the suspension of Plaintiff's license, MacAlpine personally went to Plaintiff and told him that he was fired-- on the alleged basis that Plaintiff continued to work after the EMT certificate had been suspended, and thereby created a risk to the public.  The truth of the matter was that Plaintiff had no idea of the action taken by Defendants against his license, and learned of it only when MacAlpine told Plaintiff that he had been "terminated."

**(24)** Thereafter, Plaintiff learned that he was not being terminated, but immediately placed on unpaid leave—the purported basis therefore being the Tulare charges, and the EMT certification suspension.  **The "Notice of Unpaid Leave" was signed by Defendant**

**Bruegman and personally served on Plaintiff by Defendant MacAlpine on July 17, 2009.** Plaintiff was shocked and appalled at the actions being taken against him, as Defendants had never even attempted to talk with him about the Tulare charges, prior to taking actions against him.  Moreover, Defendants concealed from Plaintiff that they had affirmatively sought the suspension of his license, as a pretense to fire him.  Plaintiff would only learn the foregoing after months on unpaid leave, and initiation of an EEOC complaint (which is discussed further below.)

**(25)**    Because Plaintiff is a union member, his union's counsel assumed his representation in relative to the EMT certification issue.  Plaintiff did all that he could to fight the unlawful and discriminatory acts taken by Defendants against Plaintiff and his license, as Plaintiff knew he would be exonerated of any wrongdoing, and that the action against his license was a sham.

**(26)**    Plaintiff was forced to endure months of uncertainty regarding his job, and a great deal of distress regarding the undeniably vicious and unfair acts taken by Defendants against him.  Plaintiff was forced to go months without work, and had to draw on all forms of accrued leave that he had, just to make ends meet, and with no guarantee that when exonerated of the Tulare charges, that this nightmare of intentional wrong-doing by Defendants would end.

**(27)**    Because Plaintiff knew he was innocent of the Tulare charges, he pushed the matter forward to trial.  After a trial by his peers, Plaintiff was acquitted of any liability, and the charges against him were forever and completely dismissed.  Plaintiff hoped that with the favorable resolution of the Tulare charges, that the administrative action against his EMT certificate would instantly dissipate—as any factual basis for the same was definitively and utterly destroyed.  Unfortunately for Plaintiff, his suffering and persecution was far from over.

**(28)**    Despite the dismissal of the Tulare charges, the CCEMS continued forward with its suspension efforts—pushing the matter to a contested hearing.  Despite the hugely lower evidentiary standard of proof at the administrative hearing (lower in contrast to the Tulare

Nuttall & Coleman
2440 Capitol St., Suite 105
Fresno, CA  93721

charges/case), the licensing action terminated with the reinstatement of Plaintiff's license, and thus, an end to the pretext and excuse to terminate Plaintiff.

**(29)    On or about February 18, 2010, after reinstatement of his license and return to regular duty, Plaintiff reported a racial discrimination claim to the City against Battalion Chief Ron Stogdell, Defendant MacAlpine, Defendant Bruegman, and Deputy Chief Joel Aranaz.**

**(30)    Despite the reinstatement of Plaintiff's license, Plaintiff was informed by at least one other firefighter that Defendant MacAlpine was telling other employees at the station that he (MacAlpine) would not retire until Plaintiff was fired.  Defendant MacAlpine also told Plaintiff after his license was reinstated that it was still the City's intent to fire him.**

**(31)    On or about May 3rd, 2010, while working at the scene of a house fire, Defendant MacAlpine approached Plaintiff and started patting him on the shoulder and back area.  Plaintiff moved away from Defendant MacAlpine, but MacAlpine followed him and tried to initiate a personal conversation.  Plaintiff asked Defendant MacAlpine to please leave him alone, if what he wanted to discuss was not work-related.  As Plaintiff walked away, Defendant MacAlpine said "I just want you to know that one day we will be in heaven together and you will have to answer for your actions."  Plaintiff immediately reported this incident to his Captain and in writing to other officials. Plaintiff also reported that, around the same time period, Defendant MacAlpine singled him out and intimidated him with his weapon and his title.  This conduct was formally reported to the City on or about June 15, 2010, in a complaint titled "continued harassment."**

**(32)**    Because Plaintiff had suffered significant monetary loss as a result of the forced placement on unpaid leave, and the administrative hearings (let alone defending the Tulare charges), Plaintiff thought it would be only right that he be reimbursed for his lost accrued leave, etc., that he consumed in order to survive during the pendency of the dispute. Amazingly, Defendants had the complete lack of fairness or ethics to grant Plaintiff's request and refused to compensate him for that part of his loss.  Plaintiff was horrified and

Nuttall & Coleman
2440 Capitol St., Suite 105
Fresno, CA  93721

depressed by the way he was being trampled and dismissed by Defendants, and proceeded

to file a complaint with the Equal Employment Opportunity Commission ("EEOC"),

claiming that he was subjected to adverse employment actions (including but not limited to

Defendants affirmative efforts to disrupt Plaintiff's EMT certification status), because of his

race and color.

**(33)**     Prior to resorting to the EEOC complaint, Plaintiff reported the racial harassment and

discrimination of MacAlpine and others, through Plaintiff's established administrative

programs, policies, and rules, or in the alternative, substantially complied with the

requirements thereof.

**(34)**     Ultimately the EEOC conducted an investigation into Plaintiff's claims, and the **<u>EEOC</u>**

**<u>AFFIRMATIVELY FOUND THAT DEFENDANTS VIOLATED TITLE VII</u>**, and

subjected Plaintiff to adverse conditions and employment actions, that non-African

American employees were NOT subject to.

**(35)**     Specifically, in connection with the EEOC investigation, it was learned that non-

African-American employees were never subjected to such adverse actions/or conditions.

In fact, numerous non-African American employees of Defendants have had a wide

spectrum of criminal charges leveled against them—including fraud, embezzlement, DUI,

domestic violence, and assault, just to name a few-- however in none of these other

instances did the Fire Chief contact CCEMS and affirmatively request that a firefighter's

EMT certificate be pulled, nor were those other non-African American firefighters placed

on forced unpaid leave.

**(36)**     The foregoing acts and omissions by Defendants, and each of them, are not exhaustive,

as the discrimination which Plaintiff has been subjected to was unfortunately extensive and

pervasive.  Plaintiff reserves the right to amend this complaint as necessary to reflect said

additional acts of discrimination

**(37)**     Plaintiff complied with all administrative rules, policies, and procedures required of

him, relative to the discrimination that he was subjected to, or substantially complied with

all said requirements, or was excused from doing so by affirmative waiver of Defendants,

or by virtue of the futility of any requirement of the same.  Defendants, and each of them,

Nuttall & Coleman
2440 Capitol St., Suite 105
Fresno, CA 93721

denied any wrong-doing or discrimination at every turn—and continue to do so today, despite the EEOC's affirmative finding of discrimination.

**(38)**    Plaintiff has exhausted all administrative remedies, and has been forced to bring this action in order to vindicate his rights.  Plaintiff has received the requisite "Right to Sue" notice from the EEOC.

**(39)**    As a result of Defendants' conduct, Plaintiff suffered damages.  Plaintiff's damages are in the form of lost wages, lost accrued retirement, seniority, promotions, all in addition to general damages for the grief, anxiety, worry, frustration, hurt, fear, and otherwise distress that the totality of Defendants' conduct caused him.  Plaintiff has been injured in an amount according to proof, and in excess of the jurisdictional limits of this court.

## **FIRST CAUSE OF ACTION**

### **Violation of Title VII of the Civil Rights Act of 1964, as Amended, 42 USC 2000(e), et seq – Racial Discrimination**

### **(Against Defendants CITY and DOES 15-25)**

**(40)**    Plaintiff incorporates by reference the allegations set forth in paragraph(s) 1 through 39, set forth above, as if fully set forth hereunder.

**(41)**    TITLE VII of the Civil rights Act of 196, as amended ("Title VII"), 42 USC §2000e prohibits unlawful discrimination in employment based on race.  In pertinent part, Title VII provides as follows:

"It shall be an unlawful employment practice for an employer –

(1) to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify her employees or application for employment in any way that would deprive or tent to deprive any individual of employment opportunities or otherwise adversely affect her status as an employee, because of such individual's race, color, religion, sex, or national origin."

Nuttall & Coleman
2440 Capitol St., Suite 105
Fresno, CA  93721

**(42)**   Defendants are "employers" as used and defined under Title VII, and Plaintiff is an "employee" as used and defined under Title VII.

**(43)**   The aforementioned practices, acts, and omissions constitute violations of Title VII, entitling Plaintiff to damages proximately caused as a consequence thereof, in addition to attorney's fees and costs.

**(44)**   Defendants, by and through their agents and employees, engaged in a pervasive pattern and practice of harassing Plaintiff in violation of both the letter and spirit of Title VII, and other applicable law and public policy, based solely on Plaintiff's status as an African American, when none of Plaintiff's Caucasian co-workers or predecessors were subjected to similar treatment.  Beginning from Plaintiff's progress up from trainee and continuing to the present, the conduct and each and every act described above was in violation of applicable law, and was severe, pervasive, and occurred with such frequency so as to significantly alter Plaintiff's conditions of employment.  In addition, the conduct listed above was objectively hostile and abusive, such that it unreasonably interfered with Plaintiff's work performance.

**(45)**   Further, Defendants, and each of them, have and continue to retaliate against Plaintiff, because of and subsequent to his filing of the EEOC complaint, and are expected to continue to do so until Plaintiff abandons his will, morals, and ethics and gives in to Defendants' prejudices and leave their employ.  Said relation is expressly prohibited under Title VII, and entitles Plaintiff to damages therefor.

**(46)**   Defendants, by and through their employees and agents, committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights to be free from discrimination based on race and/or color. The course of conduct undertaken by Defendants, and each of them, was intended to cause injury to Plaintiff, including emotional distress, loss of employment, and other injury.  By engaging in the conduct described herein, including but not limited to the conduct described in the paragraphs above, Defendants intended to cause injury to Plaintiff.  Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

Nuttall & Coleman

2440 Capitol St., Suite 105

Fresno, CA  93721

**(47)**     As a proximate result of Defendants' misconduct, Plaintiff sustained, and will sustain, economic damages for past years, including unequal pay, promotional opportunities, bonuses, and benefits, as well as prospective loss of earnings, benefits, and ability to move laterally within his chosen profession.

**(48)**     Plaintiff suffered and is entitled to general damages by way of emotional distress, humiliation, mental stress and embarrassment, in an amount proven at trial.  Plaintiff is further entitled to attorneys fees, in an amount according to proof.

### SECOND CAUSE OF ACTION

### Violation of the California Fair Employment & Housing Act ("FEHA") – Cal. Govt Code §12940, et seq- Racial Discrimination

### (Against Defendants CITY and DOES 15-25)

**(49)**     Plaintiff incorporates by reference the allegations set forth in paragraph(s) 1 through 48, set forth above, as if fully set forth hereunder.

**(50)**     FEHA is a statute similar in purpose to Title VII, however, it offers broader protection of the employee, and greater remedies.

**(51)**     FEHA provides, in pertinent part that "It is an unlawful employment practice . . . [f]or an employer, because of the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, or sexual orientation of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

**(52)**     Defendants, and each of them, in engaging and continuing to engage in the conduct described above violated both the letter and spirit of FEHA, and California's strong public policy against racial discrimination in the workplace.

**(53)**     Defendants are "employers" as used and defined under FEHA, and Plaintiff is an "employee" as used and defined under FEHA.

Nuttall & Coleman
2440 Capitol St., Suite 105
Fresno, CA  93721

**(54)**   The aforementioned practices, acts, and omissions constitute violations of FEHA, entitling Plaintiff to damages proximately caused as a consequence thereof, in addition to attorneys' fees and costs.

**(55)**   Defendants, by and through their agents and employees, engaged in a pervasive pattern and practice of harassing Plaintiff in violation of both the letter and spirit of FEHA, and other applicable law and public policy, based solely on Plaintiff's status as an African American, when none of Plaintiff's Caucasian co-workers or predecessors were subjected to similar treatment.  Beginning from Plaintiff's progress up from trainee and continuing to the present, the conduct and each and every act described above was in violation of applicable law, and was severe, pervasive, and occurred with such frequency so as to significantly alter Plaintiff's conditions of employment.  In addition, the conduct listed above was objectively hostile and abusive, such that it unreasonably interfered with Plaintiff's work performance.

**(56)**   Further, Defendants, and each of them, have and continue to retaliate against Plaintiff, because of and subsequent to his filing of the EEOC complaint, and are expected to continue to do so until Plaintiff abandons his will, morals, and ethics and gives in to Defendants' prejudices and leave their employ.  Said relation is expressly prohibited under FEHA, and entitles Plaintiff to damages therefor.

**(57)**   Defendants, by and through their employees and agents committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights to be free from discrimination based on race and/or color. The course of conduct undertaken by Defendants, and each of them, was intended to cause injury to Plaintiff, including emotional distress, loss of employment, and other injury.  By engaging in the conduct described herein, including but not limited to the conduct described in the paragraphs above, Defendants intended to cause injury to Plaintiff.  Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

**(58)**   As a proximate result of Defendants' misconduct, Plaintiff sustained, and will sustain, economic damages for past years, including unequal pay, promotional opportunities,

bonuses, and benefits, as well as prospective loss of earnings, benefits, and ability to move laterally within his chosen profession.

**(59)** Plaintiff suffered and is entitled to general damages by way of emotional distress, humiliation, mental stress and embarrassment, in an amount to be proven at trial. Plaintiff is further entitled to attorneys fees, in an amount according to proof.

## THIRD CAUSE OF ACTION

### Failure to Protect & Prevent Discrimination- FEHA

### (Against Defendants CITY and DOES 15-25)

**(60)** Plaintiff incorporates by reference the allegations set forth in paragraph(s) 1 through 59, set forth above, as if fully set forth hereunder.

**(61)** **FEHA requires an employer to "take all reasonable steps necessary to prevent discrimination and harassment from occurring." (Gov. Code § 12940(k).)**

**(62)** **Defendant City at all times relevant hereto was Plaintiff's employer pursuant to Gov. Code § 12926(d), which requires the City to prevent discrimination and harassment on the basis of race pursuant to Gov. Code § 12940(k).**

**(63)** **The City knew or should have known of the continuous and severe race discrimination and harassment experienced by Plaintiff as Plaintiff made several oral and written reports regarding same.**

**(64)** **The City maintained the claims of race discrimination and harassment were unfounded and did nothing to stop or rectify the ongoing discrimination and harassment. The discrimination and harassment became more severe over time as Defendant MacAlpine retaliated against Plaintiff as set forth in multiple paragraphs above.**

**(65)** **As a direct and proximate result of Defendant City's failure to prevent racial discrimination and harassment, Plaintiff has suffered damages, in an amount according to proof.**

/ / /

/ / /

/ / /

Nuttall & Coleman
2440 Capitol St., Suite 105
Fresno, CA  93721

**FOURTH CAUSE OF ACTON**

**Negligent Hiring/Training/Supervision**

**(Against CITY and DOES 15-25)**

**(66)**  Plaintiff incorporates by reference the allegations set forth in paragraph(s) 1 through 65, set forth above, as if fully set forth hereunder.

**(67)**  **At all times relevant to this complaint, Defendants Bruegman and MacAlpine were employees of Defendant City.**

**(68)**  **Plaintiff is informed and believes and thereon alleges that Defendant City knew or should have known that Defendants Bruegman and MacAlpine had engaged in acts of discrimination and harassment in the past.**

**(69)**  Defendants had a duty to properly hire, train, and supervise their agents and employees to ensure that persons such as Plaintiff would be free from unlawful discrimination and harassment.

**(70)**  Defendants breached said duty in all that they did **and failed to exercise due care** with respect to the hiring/training/supervision of their employees with respect to the matters set forth in this Complaint.

**(71)**  **Defendant City allowed Defendants Bruegman and MacAlpine to continue his employment without any discipline for their acts of discrimination and harassment against Plaintiff.**

**(72)**  **Defendants' discriminatory, harassing and retaliatory conduct contravenes fundamental public policy and exceeds the risks inherent in the employment relationship.**

**(73)**  Defendants' breach of their duties actually and proximately caused Plaintiff damages, in an amount according to proof.

**FIFTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

**(Against ALL DEFENDANTS)**

**(74)**  Plaintiff incorporates by reference the allegations set forth in paragraph(s) 1 through 73, set forth above, as if fully set forth hereunder.

**(75)**     Plaintiff was forced to endure outrageous words and actions beyond the bounds of any legitimate management function and exposing Plaintiff to risks far above and beyond those normally associated with employment; to wit, the conduct described in paragraph(s) 1 through 71, above, generally and specifically Defendant**s Bruegman's and MacAlpine's** pattern and practice of berating, demeaning Plaintiff, and subjecting Plaintiff to the fear, anxiety, worry, and pain associated with dealing with the consequences of Defendants' unlawful conduct.  The aforementioned conduct served no legitimate business purpose and comprised no reasonable management function or decision.

**(76)**     Defendants **Bruegman and MacAlpine**, by their unlawful conduct of harassing and discriminating against Plaintiff, subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, thereby causing Plaintiff extreme emotional distress.

**(77)**     As a direct and proximate result, Plaintiff has suffered damages in an amount within the jurisdiction of this Court, the exact amount of which is to be proven at trial.

**(78)     Defendants' discriminatory, harassing and retaliatory conduct contravenes fundamental public policy and exceeds the risks inherent in the employment relationship.**

**(79)     Defendant City is vicariously liable for injury proximately caused by the act or omission of employees within the scope of their employment under Gov. Code § 815.2 where the employee is not immune from liability.  At all times relevant hereto, employees of City, Bruegman and MacAlpine, were not immune from liability for the aforementioned acts, therefore Defendant City is liable for these acts.**

**(80)**     Defendants, by and through their employees and agents committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights to be free from discrimination based on race and/or color. The course of conduct undertaken by Defendants, and each of them, was intended to cause injury to Plaintiff, including emotional distress, loss of employment, and other injury.  By engaging in the conduct described herein, including but not limited to the conduct described

in the paragraphs above, Defendants intended to cause injury to Plaintiff.  Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

## SIXTH CAUSE OF ACTION

### Negligence

### (Against ALL DEFENDANTS)

**(81)**    Plaintiff incorporates by reference the allegations set forth in paragraph(s) 1 through 80, set forth above, as if fully set forth hereunder.

**(82)**    At all times herein mention, a special relationship existed between Plaintiff and Defendants, specifically, that of employer and employee and, as such, Defendants owed a duty to exercise reasonable care towards Plaintiff.

**(83)    At all times relevant hereto Defendants Bruegman and MacAlpine, and DOES 1-14, were the agents, employees or contractors of Defendant City and DOES 15-25, and were at all times acting within the course and scope of their employment and with the permission, knowledge and consent of said co-defendants.**

**(84)**    By virtue of the above dutie(s), Defendants owed Plaintiff a duty of care so as to prevent and protect Plaintiff from harassment and retaliation, as required by law, and to maintain methods of redress to allow for the immediate and effective resolution of complaints relative to violations of policies and procedures which should (had they been properly thought out and crafted) adequately prevent and punish discrimination in the workplace.

**(85)**    Defendants breached their duties to Plaintiff by failing to take reasonable steps to prevent, end, and remedy the discrimination experienced by Plaintiff, and that Plaintiff continues to be subjected to.

**(86)**     Defendants **knew or should have known that such outrageous words and actions would cause Plaintiff emotional distress.**

**(87)**    **These breaches** actually and proximately caused Plaintiff damages, in an amount according to proof.

**(88)    Defendant City is vicariously liable for injury proximately caused by the act or omission of employees within the scope of their employment under Gov. Code § 815.2**

Nuttall & Coleman
2440 Capitol St., Suite 105
Fresno, CA  93721

where the employee is not immune from liability.  At all times relevant hereto, employees of City, Bruegman and MacAlpine, were not immune from liability for the aforementioned acts, therefore Defendant City is liable for these acts.

(89)    Defendants' discriminatory, harassing and retaliatory conduct contravenes fundamental public policy and exceeds the risks inherent in the employment relationship.

## SEVENTH CAUSE OF ACTION

### Retaliation- FEHA

**(Against Defendants CITY and DOES 15-25)**

(90)    Plaintiff incorporates by reference the allegations set forth in paragraph(s) 1 through 89, set forth above, as if fully set forth hereunder.

(91)    Defendants City and DOES 15-25 intentionally, willfully, and without justification retaliated against Plaintiff for expressing opposition to workplace discrimination, thereby depriving him of equal employment opportunity in violation of Gov. Code § 12940 et seq.

(92)    Defendant City knew or should have known of this conduct and failed to take immediate and appropriate corrective action.

(93)    As a proximate result of Defendants' misconduct, Plaintiff sustained, and will sustain, economic damages for past years, including unequal pay, promotional opportunities, bonuses, and benefits, as well as prospective loss of earnings, benefits, and ability to move laterally within his chosen profession.

(94)    Plaintiff suffered and is entitled to general damages by way of emotional distress, humiliation, mental stress and embarrassment, in an amount to be proven at trial. Plaintiff is further entitled to attorneys fees, in an amount according to proof.

## EIGHTH CAUSE OF ACTION

### Failure to Pay Wages

**(Against Defendants CITY and DOES 15-25)**

(95)    Plaintiff incorporates by reference the allegations set forth in paragraph(s) 1 through 94, set forth above, as if fully set forth hereunder.

Nuttall & Coleman
2440 Capitol St., Suite 105
Fresno, CA  93721

**(96)** In retaliating against Plaintiff for filing the EEOC claim and/or otherwise complaining about harassment, Plaintiff has not been paid for time on the job that other non-complaining employees were paid for. By way of example, Plaintiff has been denied pay for time spent after "clocking in" at one firehouse (his main firehouse) and then being told that he is needed at another, and must travel there after clocking in.

**(97)** Plaintiff has been denied for that travel time, despite the fact that Defendants policies and procedures (in addition to applicable law) require that said time be compensated.

**(98)** Defendants are liable for the failure to pay wages therefor, and penalties associated therewith.

<u>**NINTH CAUSE OF ACTION**</u>

<u>**Violation of the California Fair Employment & Housing Act ("FEHA") – Cal. Govt**</u>

<u>**Code §12940, et seq- Harassment**</u>

**(Against ALL DEFENDANTS)**

**(99)** Plaintiff incorporates by reference the allegations set forth in paragraph(s) 1 through 98, set forth above, as if fully set forth hereunder.

**(100)** FEHA provides that it is unlawful for an employer or any other person to harass an employee because of their race. (Gov. Code § 12940(j)(1).)

**(101)** Defendants, and each of them, in engaging and continuing to engage in the conduct described above violated both the letter and spirit of FEHA, and California's strong public policy against racial discrimination and harassment in the workplace.

**(102)** Defendants are "employers" and "other person(s)" as used and defined under FEHA, and Plaintiff is an "employee" as used and defined under FEHA.

**(103)** The aforementioned practices, acts, and omissions constitute violations of FEHA, entitling Plaintiff to damages proximately caused as a consequence thereof, in addition to attorneys' fees and costs.

**(104)** Defendants, by and through their agents and employees, engaged in a pervasive pattern and practice of harassing Plaintiff in violation of both the letter and spirit of FEHA, and other applicable law and public policy, based solely on Plaintiff's status as an African American, when none of Plaintiff's Caucasian co-workers or predecessors

Nuttall & Coleman
2440 Capitol St., Suite 105
Fresno, CA  93721

were subjected to similar treatment.  Beginning from Plaintiff's progress up from trainee and continuing to the present, the conduct and each and every act described above was in violation of applicable law, and was severe, pervasive, and occurred with such frequency so as to significantly alter Plaintiff's conditions of employment.  In addition, the conduct listed above was objectively hostile and abusive, such that it unreasonably interfered with Plaintiff's work performance.

(105)  Defendants Bruegman and MacAlpine committed the acts herein despicably, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights to be free from discrimination based on race and/or color.  The course of conduct undertaken by Defendants, and each of them, was intended to cause injury to Plaintiff, including emotional distress, loss of employment, and other injury.  By engaging in the conduct described herein, including but not limited to the conduct described in the paragraphs above, Defendants intended to cause injury to Plaintiff.  Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

(106)  Defendant City knew or should have known of this conduct and failed to take immediate and appropriate corrective action.

(107)  As a proximate result of Defendants' misconduct, Plaintiff sustained, and will sustain, economic damages for past years, including unequal pay, promotional opportunities, bonuses, and benefits, as well as prospective loss of earnings, benefits, and ability to move laterally within his chosen profession.

(108)  Plaintiff suffered and is entitled to general damages by way of emotional distress, humiliation, mental stress and embarrassment, in an amount to be proven at trial.  Plaintiff is further entitled to attorneys fees, in an amount according to proof.

/ / /

/ / /

/ / /

/ / /

## TENTH CAUSE OF ACTION

### Violation of Title VII of the Civil Rights Act of 1964, as Amended, 42 USC 2000(e), et seq

### -Retaliation

### (Against Defendants CITY and DOES 15-25)

**(109)**   Plaintiff incorporates by reference the allegations set forth in paragraph(s) 1 through 108, set forth above, as if fully set forth hereunder.

**(110)**   Defendants City and DOES 15-25 intentionally, willfully, and without justification retaliated against Plaintiff for expressing opposition to workplace discrimination, thereby depriving him of equal employment opportunity in violation of 42 U.S.C. § 2000(e), et seq.

**(111)**   Defendant City knew or should have known of this conduct and failed to take immediate and appropriate corrective action.

**(112)**   As a proximate result of Defendants' misconduct, Plaintiff sustained, and will sustain, economic damages for past years, including unequal pay, promotional opportunities, bonuses, and benefits, as well as prospective loss of earnings, benefits, and ability to move laterally within his chosen profession.

**(113)**   Plaintiff suffered and is entitled to general damages by way of emotional distress, humiliation, mental stress and embarrassment, in an amount to be proven at trial. Plaintiff is further entitled to attorneys fees, in an amount according to proof.

## ELEVENTH CAUSE OF ACTION

### Violation of Title VII of the Civil Rights Act of 1964, as Amended, 42 USC 2000(e), et seq

### –Harassment

### (Against Defendants CITY and DOES 15-25)

**(114)**   Plaintiff incorporates by reference the allegations set forth in paragraph(s) 1 through 114, set forth above, as if fully set forth hereunder.

**(115)**   During the course of his employment, Plaintiff came under the supervision of Defendants Bruegman and MacAlpine, who subjected Plaintiff to differential terms and conditions of employment because of his race.

Nuttall & Coleman
2440 Capitol St., Suite 105
Fresno, CA  93721

**(116)   Defendants have engaged in an egregious pattern of harassment against Plaintiff based on his race.**

**(117)   Defendants, by and through their agents and employees, engaged in a pervasive pattern and practice of harassing Plaintiff in violation of both the letter and spirit of Title VII, and other applicable law and public policy, based solely on Plaintiff's status as an African American, when none of Plaintiff's Caucasian co-workers or predecessors were subjected to similar treatment.  Beginning from Plaintiff's progress up from trainee and continuing to the present, the conduct and each and every act described above was in violation of applicable law, and was severe, pervasive, and occurred with such frequency so as to significantly alter Plaintiff's conditions of employment.  In addition, the conduct listed above was objectively hostile and abusive, such that it unreasonably interfered with Plaintiff's work performance.**

**(118)   All the above actions were taken by Defendants in order to deprive Plaintiff of employment and promotion opportunities because of his race.**

**(119)   Defendants knew or should have known of the above malicious acts.**

**(120)   As a result of the above misconduct, and as a proximate cause thereof, Plaintiff has been and continues to be denied his right to equal employment opportunity in violation of 42 USC 2000(e), et seq.**

**(121)   Plaintiff suffered and is entitled to general damages by way of emotional distress, humiliation, mental stress and embarrassment, in an amount to be proven at trial. Plaintiff is further entitled to attorneys fees, in an amount according to proof.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

    (1) For compensatory damages according to proof, including but not limited to past and future lost earnings, retirement/pension, and other employee benefits, and unpaid but earned wages;

    (2) For compensatory damages according to proof, including but not limited to past, present, and future emotional distress, grief, anxiety, worry, mental anguish and other general damage;

Nuttall & Coleman
2440 Capitol St., Suite 105
Fresno, CA 93721

(3) For the penalty for failure to pay wages earned;

(4) For punitive damages in an amount appropriate to punish Defendants **Bruegman and MacAlpine** and deter others from engaging in similar conduct;

(5) For costs of suit incurred by Plaintiff and attorney's fees;

(6) For interest on the matters at the highest legal rate from July 2009 to the present;

(7) For such other relief the court deems just and proper.


DATED: November 30, 2012.                 Respectfully Submitted,

                                          NUTTALL & COLEMAN

                                          /s/ Roger S. Bonakdar
                                          _____
                                          ROGER S. BONAKDAR
                                          Attorneys for Plaintiff
                                          CARLTON JONES