**BONAKDAR LAW FIRM**

**ROGER S. BONAKDAR #253920**
2344 TULARE STREET, SUITE 301
FRESNO, CALIFORNIA 93721
PHONE (559) 495-1545

Attorneys for Plaintiff,
CARLTON JONES

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLTON JONES,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF FRESNO, RANDY R. BRUEGMAN, individually and in his official capacity as an officer of the Fresno Fire Department, DON MACALPINE, individually and in his official capacity as an officer of the Fresno Fire Department, and DOES 1 through 25, inclusive,<br><br>Defendant. | 1:12-CV-01797-LJO-GSA<br><br>**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(b)(1), (6); POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:        February 6, 2013<br>Time:       8:30 a.m.<br>Courtroom:  4 |

Plaintiff CARLTON JONES (hereinafter "Jones") hereby opposes the Motion to Dismiss the First Amended Complaint filed by Defendants CITY OF FRESNO (hereinafter "City"), RANDY R. BRUEGMAN (hereinafter "Bruegman"), and DON MACALPINE (hereinafter "MacAlpine".)

This opposition is supported by the Memorandum of Points and Authorities filed herein, the files and records of the court, and upon such other matters as the Court deems pertinent to this matter.

/ / /

/ / /

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## LAW AND ARGUMENT

### A. PLAINTIFF IS EXCUSED FROM FILING A SEPARATE GOVERNMENT TORT CLAIM, AND REQUESTS LEAVE TO AMEND THE TORT CAUSES OF ACTION TO PROPERLY ALLEGE THE SAME.

Defendants argue this court does not have jurisdiction over any tort theories against the City because Plaintiff has not alleged compliance with or excuse from the Government Tort Claims Act. See Defendants' Motion to Dismiss, "Mtn. to Dismiss", p. 4, ¶ 1-p. 5, ¶ 2.

As a general proposition, the purpose of the Government Tort Claims Act is to provide a government entity with sufficient information to be able to investigate and evaluate the merits of claims and, if possible, avoid the expense of litigating meritorious claims. *City of San Jose v. Superior Court*, 12 Cal.3d 447, 455 (1974); *Dilts v. Cantua Elementary School Dist.*, 189 Cal.App.3d 27, 32 (1987). Where a public entity defendant has notice of a claim through a federal Equal Opportunity Employment Commission ("EEOC") and/or a state Department of Fair Housing and Employment ("DFEH") claim, and had an opportunity to investigate and resolve the claims through those procedures, there is no requirement that the claimant file an additional tort claim with that entity. *Garcia v. Los Angeles Unified School District*, 173 Cal.App.3d 701 (1985); *Murray v. Oceanside Unified School District*, 79 Cal.App.4th 1338, 1358-59 (2000).

In reviewing the dearth of cases on this issue, the primary purpose of the Government Tort Claims Act ("GTCA") can be readily seen-- to give the government the opportunity to review and investigate claims made against it, so it might have the opportunity to resolve them outside of litigation. In the case at bar, we see that the primary purpose of the Government Tort Claims Act has been met. The First Amended Complaint states that Plaintiff complained to supervisors and made use of Defendant Fresno's internal policies and procedures for reporting harassment and unfair treatment. In response, Defendant City rejected Plaintiff's claims, and found no actionable violation. At that point, Plaintiff turned to the EEOC, and that contact resulted in an EEOC investigation of Defendants, which concluded with a finding of a violation

of Title VII.  Concurrently with giving Defendant Fresno notice of its findings of discrimination, the EEOC set up a meeting to resolve the claims-- which Defendant Fresno attended, but "walked out" of because it apparently rejects the notion that the EEOC has any valid function, or investigatory utility.

All of the foregoing (from Plaintiff's use of Defendant's internal complaint procedure, to the "walk out" at the EEOC meeting) is documented within the EEOC file.  While Defendants are quick to attach certain forms that were a small part of the EEOC complaint process, they wholly avoid making any reference to the acts and steps that preceded the instant action.  Based on the totality of the foregoing, it is abundantly clear that Defendant Fresno had notice of Plaintiff's claims prior to the initiation of this action and, as such, was afforded all material protections of the GTCA.  Therefore, Plaintiff substantially complied with the requirements of the GTCA, and is excused from providing any further notice.

A request for leave to amend "shall be freely given when justice so requires."  F.R.C.P. 15(a); *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).  Leave to amend should only be denied if the deficiency could not possibly be cured.  *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  To the extent the court finds that further and more particular facts relating to said substantial compliance and/or excuse from provision of further and separate notice must be made, Plaintiff hereby requests leave of court to amend and so allege further facts to cure any deficiency in the pleading.

B. **PLAINTIFF'S NEGLIGENCE-BASED CLAIMS ARE NOT BARRED BY THE WORKER'S COMPENSATION ACT BECAUSE DISCRIMINATORY PRACTICES AND THE RESULTING HARM ARE NOT PART OF THE "NORMAL" EMPLOYMENT RELATIONSHIP.**

Defendants argue the Fourth and Sixth causes of action should be dismissed because they are barred by the exclusivity provision of the Worker's Compensation Act, and that Plaintiff is avoiding this provision by characterizing Defendants' actions as manifestly unfair, outrageous, or as harassment.  Mtn. to Dismiss, p. 5, ¶ 1; p. 6, ¶ 2.

The exclusive remedy provision (also known as the "exclusive remedy rule") of the

1  Worker's Compensation Act ("Work Comp") is not intended for use by employers as a shield
2  from discrimination claims.  *Murray v. Oceanside Unified School District*, 79 Cal.App.4th
3  1338, 1362 (2000); *Accardi v. Superior Court*, 17 Cal.App.4th 341, 352 (1993).  Although the
4  "normal" employment relationship may include some degree of emotional distress related to
5  promotions, demotions, criticism, etc., a claim for emotional and psychological damage is not
6  barred when caused by an illegal discriminatory practice.  *Accardi*, *Ibid.*; *Watson v.*
7  *Department of Rehabilitation*, 212 Cal.App.3d 1271, 1285-86 (1989).  Race discrimination is
8  not a normal incident of employment.  *Watson* at p. 1287; *Barefield v. Board of Trustees of CA*
9  *State University, Bakersfield*, 500 F.Supp.2d 1244, 1275 (E.D. Cal. 2007).  Furthermore, the
10  existence of a workers' compensation remedy alone does not establish that the remedy is
11  exclusive.  *City of Moorpark v. Superior Court*, 18 Cal.4th 1143, 1154 (1998).  The purpose of
12  the exclusive remedy rule is the "compensation bargain" whereby the employer can limit their
13  liability for industrial injuries and the employee can obtain swift relief without having to prove
14  fault.  *Huffman v. Interstate Brands Companies*, 121 Cal.App.4th 679, 693 (2004); *Shoemaker*
15  *v. Myers*, 52 Cal.3d 1, 16 (1990).
16        Defendant's reliance on worker's compensation law is misplaced.  As a threshold issue,
17  Work Comp is set up to provide workers and employers a level of certainty when dealing with
18  liability for ***industrial injuries,*** such as a broken arm suffered by a painter who fell off a ladder
19  while on the job.  Plaintiff's negligence claims are not subject to the exclusive remedy
20  provision because they are parasitic to the discrimination, harassment, and retaliation claims.
21  These unlawful acts are not part of the "normal" employment relationship and Defendants
22  should not be allowed to use Work Comp to shield themselves from liability for the emotional
23  distress caused by their negligence or from the harm caused by their negligent hiring, training,
24  and supervision.
25        Finding that Plaintiff's claims are subject to the exclusive remedy rule would not further
26  the purpose of Work Comp.  In Work Comp, the "compensation bargain" presents a trade-off
27  whereby both the employer and employee benefit from the process outside of litigation for risks
28  and injuries that grow out of the nature of the employer's business and the employment

relationship. In contrast, there is no "bargain" here, nor can it be said that racial discrimination and harassment are a "natural part" of the employment relationship. Plaintiff was not involved in the sort of industrial accident contemplated by Work Comp. Rather, he was subjected to discrimination, harassment, and retaliation on a continuing basis, despite his efforts to get Defendant Fresno to take some action to prevent it.

Plaintiff's Fourth and Sixth causes of action are not subject to the exclusive remedy rule of the Worker's Compensation Act, and should not be dismissed on this basis.

### C. PLAINTIFF HAS SUFFICIENTLY ALLEGED A CLAIM OF RACIAL HARASSMENT AGAINST DEFENDANT BRUEGMAN UNDER BOTH TITLE VII AND FEHA.

Defendant Bruegman argues Plaintiff's claims of racial harassment against him under Title VII and FEHA must be dismissed because the facts alleged are insufficient to establish a hostile work environment, and that any acts Plaintiff alleged in the Complaint were not discriminatory, but were facially race-neutral. Mtn. to Dismiss, p. 8, ¶ 2; p. 12, ¶ 2.

For purposes of a 12(b)(6) motion, a claim for relief can survive if the facts alleged state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Chavez v. United States*, 683 F.3d 1102, 1108-1109 (9th Cir. 2012), quoting *Iqbal*, *Ibid*.

Racial harassment can be proved by either offensive comments or other abusive conduct clearly based on the plaintiff's race or ethnicity, and the conduct must be sufficiently "severe" or "pervasive" to alter the conditions of their employment. *Aguilar v. Avis Rent A Car System, Inc.*, 21 Cal.4th 121, 130 (1999). This type of abusive environment often affects an employee's job performance, discourages the employee from remaining on the job, or keeps them from being promoted. *Aguilar*, *Ibid.*; *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993). Even an isolated incident or group of incidents may be the proper basis for a hostile work environment claim if the conduct is sufficiently severe. *Martinez v. Marin Sanitary Service*, 349 F.Supp.2d 1234, 1252 (N.D. Cal. 2004).

Furthermore, when the harassment comes from a supervisor rather than a co-worker, the conduct may be considered more severe. *Martinez*, *supra*, at p. 1253; *Brooks v. City of San Mateo*, 229 F.3d 917, 927 at n.9 (9th Cir. 2000). Another factor to consider in the severity of harassing conduct is whether the behavior is "physically threatening or publicly humiliating." *Martinez*, *Id.*, at p. 1254.

Defendant Bruegman initiated and actively pursued the suspension of Plaintiff's EMT license. Defendant Bruegman did so with the intent to terminate Plaintiff's employment entirely, and with the knowledge that an EMT certification is a minimum qualification for employment as a firefighter in Fresno. Defendant Bruegman also initiated Plaintiff's leave from employment without pay, and a notice for proposed termination. Defendant Bruegman did not contact authorities to get an EMT certification suspended with any non-African American employee, even when they were charged and/or convicted of criminal conduct.

This conduct is severe and publicly humiliating because Defendant Bruegman disseminated information about pending criminal charges alleging serious conduct not only to other individuals in the fire department, but also to the Central California Emergency Medical Services Agency (CCESMA) as a threat to public health and safety. Plaintiff was later acquitted of all the charges, but suffered distress, embarrassment, and grave humiliation as a result of this smear campaign against him. Defendant Bruegman used his authority as the Fire Chief to intimidate and harass Plaintiff in the hope that Plaintiff would resign, or to otherwise create a climate for Plaintiff to where he would succumb to the external pressures created by Bruegman and his cohort(s).

Defendant Bruegman's quest to terminate Plaintiff was sufficiently severe to alter the condition of his employment and create a hostile work environment. Plaintiff's harassment claims under FEHA and Title VII are sufficiently pled, and should not be dismissed. To the extent the court believes that further allegations must be pled for these causes of action to survive, Plaintiff again respectfully requests leave to amend.

/ / /

/ / /

### D. **THIS COURT HAS JURISDICTION OVER THE RETALIATION CLAIMS BECAUSE PLAINTIFF SUBSTANTIALLY COMPLIED WITH THE ADMINISTRATIVE FILING REQUIREMENTS.**

Defendants argue that Plaintiff did not properly pursue a claim for retaliation in his administrative filings because Plaintiff did not check the box marked "Retaliation" on any form. Mtn. to Dismiss at p. 13, ¶ 1; p. 16, ¶ 4. However, Plaintiff substantially complied with the filing requirements, and this court has jurisdiction over the retaliation claims.

Substantial compliance with the presentment requirements of a discrimination claim is a jurisdictional prerequisite. *Sommatino v. United States*, 225 F.3d 704, 708 (9th Cir. 2001). For a district court to have jurisdiction over a retaliation claim under Title VII, the claim must either: (1) be within the scope of the EEOC investigation that reasonably could be expected to grow out of the allegations; or (2) be like or reasonably related to the allegations made before the EEOC. *Leong v. Potter*, 347 F.3d 1117, 1122 (2003); *Ulloa v. Potter*, 442 Fed.Appx. 334, 336 (2011).

In assessing substantial compliance, the court should construe the EEOC charges with the "utmost liberality" in the Plaintiff's favor. *Anderson v. American Airlines, Inc.*, 252 Fed.Appx. 166, 168 (9th Cir. 2007); *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990). In determining whether claims are reasonably related, the court should also inquire into whether the original EEOC investigation would have encompassed the charges. *Shelley v. Geren*, 666 F.3d 599, 606 (9th Cir. 2012); *Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1476 (9th Cir. 1989).

Furthermore, the Ninth Circuit has allowed a Plaintiff to proceed on a retaliation claim where the EEOC charge alleged harassment and the retaliation could have "grown out of the charge." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 645-46 (9th Cir. 2003). The plaintiff in *Vasquez* alleged retaliation for filing a discrimination charge. A retaliation claim was not explicitly stated in his EEOC claim, and the court examined the issue of administrative exhaustion. The court held the retaliation claim **had** been exhausted as to one defendant. *Id*. at pp. 644-45. The plaintiff's EEOC complaint alleged that he was subject to harassment and different treatment, that he was transferred out of one work location, no reason was given for

this harassment and different treatment, and he was told he was transferred for violating policy. *Id*. The plaintiff checked the box for discrimination, but not for retaliation. *Id*. However, the court found this one retaliation claim had been administratively exhausted because it was likely an EEOC investigation would have revealed his earlier grievance against this individual, providing a reason for retaliation. *Id*. at p. 646.

Plaintiff's first administrative Charge of Discrimination is dated March 24, 2010. See Defendants' Request for Judicial Notice ("RJN"), Ex. A. This Charge was amended to include "harassment" on September 8, 2010, and was marked as a "continuing action." See RJN, Ex. C. Plaintiff lodged internal grievances with the City of Fresno regarding both the race discrimination and harassment in addition to the administrative claims. Retaliation and harassment claims may overlap as an evidentiary matter, and harassment may constitute retaliation. *Kelley v. Conco Companies*, 196 Cal.App.4th 191, 212 (2011); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1056, fn. 16 (2011). This type of "retaliatory harassment" was the substance of an internal memo written by Plaintiff on June 15, 2010, and this memo was received into the EEOC's investigation on October 18, 2010. Various other internal documents and emails were considered in the EEOC's investigation of "harassment" after Plaintiff filed the amended claim.

Regardless of the fact that Plaintiff did not mark the "Retaliation" box on his amended administrative claim, he substantially complied with the EEOC presentment requirements because a retaliation claim was within the scope of the EEOC investigation, and is actually like and reasonably related to the EEOC investigation for continuing racial discrimination and harassment. Since the DFEH waives investigation of the matter and defers to the EEOC, the EEOC investigation encompassed conduct and events sufficient to find Plaintiff was in substantial compliance with the administrative exhaustion requirements for retaliation claims under both FEHA and Title VII.

Plaintiff's substantial compliance with the filing requirements prevents his retaliation claims from being subject to dismissal.

/ / /

## II.

## **CONCLUSION**

Plaintiff respectfully requests that the Motion to Dismiss the First Amended Complaint be denied in its entirety. In the alternative, should the court grant the motion to dismiss any claim (or a portion thereof), Plaintiff requests that any dismissal be without prejudice, and that he be given leave to amend the claim(s) to cure any defect.

Respectfully submitted,

Dated: January 21, 2013                     NUTTALL & COLEMAN

/s/ Roger S. Bonakdar_____
ROGER S. BONAKDAR

9
Opposition to Defendants' Motion to Dismiss First Amended Complaint