**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARLTON JONES,<br><br>        Plaintiff,<br><br>  v.<br><br>CITY OF FRESNO, RANDY R. BRUEGMAN, DON MACALPINE, and DOES 1-15,<br><br>        Defendants. | 1:12-CV-01797-LJO-GSA<br><br>**ORDER ON MOTION TO DISMISS AMENDED COMPLAINT** (Doc. 12) |

**PRELIMINARY STATEMENT TO PARTIES AND COUNSEL**

    Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to consider consent to a Magistrate Judge to conduct all further proceedings in that the Magistrate Judges' availability is far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases.

**INTRODUCTION**

    Plaintiff Carlton Jones ("Jones") has brought suit against the City of Fresno ("the City"), Randy Bruegman ("Bruegman"), Don MacAlpine ("MacAlpine"), and Does 1 through 15 (collectively

1

"Defendants") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e), the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940, and California tort law. After Defendants filed motions to dismiss, Jones filed an amended complaint. Now pending before the Court is Defendants' motion to dismiss portions of Jones' amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Jones opposed the motion, and Defendants have filed a reply. Upon careful consideration of the parties' arguments, the Court GRANTS Defendants' motion to dismiss portions of Jones' amended complaint and GRANTS IN PART Jones' request for leave to amend.

## BACKGROUND

### A. Facts

Jones has worked for the Fresno Fire Department since 2002. His current position is Engineer. Jones alleges that he has been treated disparately and adversely because he is African-American.

Jones alleges that, in 2005 or 2006, he witnessed a conversation between his then supervisor, Andy Noles, and another firefighter in which Noles referred to the academy requirement that cadets pick up old furniture from alleyways as "nigger work" and "stuff black people do."

MacAlpine supervised Jones at different times. At one point, Jones was provided with a department issued vehicle. Jones alleges that MacAlpine interfered with the issuance of the vehicle to Jones on account of his race.

In December 2006, MacAlpine rated Jones' job performance as "short of standard" on the November monthly report while Jones' prior monthly reports since starting his employment in 2002 allegedly have been positive. Jones wrote a letter to Bruegman, the Fire Chief, notifying him that MacAlpine threatened Jones during the November monthly evaluation and that Jones was completing his probation as a Specialist rather than an Engineer to avoid MacAlpine.

Jones alleges that, in 2008, MacAlpine made statements directed toward Jones that men are ranked by their race. MacAlpine allegedly stated that white men were the most valuable, followed by Asian men, and that black men ranked the lowest in terms of their value, and that women were ranked below all men.

Also in 2008, Jones was interviewed for an article in a local emergency response publication.

Jones alleges that he was harassed about the interview and told that he was using city property for personal gain even though the interview did not hinder response times or take Jones away from his duties. Jones further alleges that non-African American firefighters who used Fire Department equipment for the same publication and for personal purposes were not disciplined for their conduct.

Prior to 2009, Jones had a strained relationship with his then spouse which led to his arrest and criminal charges. Bruegman sought and obtained suspension of Jones' EMT certification, which is required for the firefighter position. Jones was placed on unpaid leave starting July 17, 2009. Following a jury trial, Jones was acquitted of all charges. The Central California Emergency Medical Services Agency for Fresno ("CCMES") held a contested hearing on Jones' suspension and reinstated Jones' EMT certification. Following Jones' return to regular duty, MacAlpine allegedly stated that he and the City still wanted to fire Jones. Jones alleges that, in February 2010, he also filed a report for racial discrimination with the City against MacAlpine and Bruegman, among others.

Jones filed a Charge of Discrimination, dated March 24, 2010, with the California Department of Fair Employment and Housing ("DFEH") against the City for disparate treatment. Jones received a notice of right-to-sue under FEHA, dated March 25, 2010, from the DFEH.

In June 2010, Jones reported to his Captain and other officials that MacAlpine had singled him out and intimidated him with MacAlpine's weapon and title, and that MacAlpine told Jones that "one day we will be in heaven together and you will have to answer for your actions."

Jones filed an amended Charge of Discrimination, dated September 9, 2010, with the DFEH for disparate treatment and harassment. Jones received a notice of right-to-sue under FEHA, dated September 10, 2010, from the DFEH.

Jones requested to be reimbursed for his lost accrued leave and related monetary losses as a result of being placed on unpaid leave. Defendants denied Jones' request. The Equal Employment Opportunity Commission ("EEOC") conducted an investigation pursuant to Jones' complaint and allegedly found that Defendants violated Title VII and that Jones was subject to adverse conditions and employment actions to which non-African American employees were not subject. Specifically, in connection with the EEOC investigation, Jones learned that numerous non-African American employees of the City have been charged with various criminal violations, including fraud,

3

embezzlement, DUI, domestic violence, and assault, but none of those employees had been placed on unpaid leave. The Fire Chief also had never contacted CCEMS to have an employee's EMT certification suspended. Jones has received a notice of right-to-sue within ninety days under Title VII, dated June 27, 2012, from the EEOC.

**B.  Procedural History**

Jones filed a complaint on September 25, 2012 in Fresno County Superior Court alleging eight causes of action for violations of Title VII, FEHA, and California common law. On November 2, 2012, Defendants timely removed this action to federal court on the basis of federal question jurisdiction for the causes of action related to Title VII and supplemental jurisdiction over the state law causes of action. Defendants filed motions to dismiss on November 9, 2012 and November 27, 2012. Jones filed a First Amended Complaint on November 30, 2012. Defendants filed the instant motion to dismiss portions of the amended complaint on December 26, 2012. Jones opposed the motion on January 21, 2013, and Defendants filed a reply on January 29, 2013.

Having considered the parties' arguments and the relevant law, the Court issues this order.

**DISCUSSION**

**Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)1 and 12(b)(6)**

**A.  Legal Standards**

   a.   **Fed. R. Civ. P. 12(b)(1)** [1]

A motion to dismiss for lack of subject-matter jurisdiction determines whether the plaintiff has a right to be in the particular federal court, whereas a motion to dismiss for failure to state a claim is an adjudication as to whether a cognizable legal claim has been stated. *Trustees of Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc*., 572 F.3d 771, 775 (9th Cir. 2009) (quoting 5B Wright & Miller, *Federal Practice and Procedure* § 1350 (3d ed. 2004)). Faced with a Rule

---

[1] Defendants purport to bring this motion to dismiss under Fed. R. Civ. P. 12(b)(1) as well as 12(b)(6) but make no mention of 12(b)(1) other than a footnote stating that "[a] Rule 12 motion can also be based on a lack of subject matter jurisdiction pursuant to FRCP Rule 12(b)(1)." The Court construes Defendants' motion as seeking dismissal under Fed. R. Civ. P. 12(b)(6) of Jones' challenged claims and also under 12(b)(1) of Jones' retaliation claims. *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) ("[I]f exhaustion is required by statute, it may be mandatory and jurisdictional[.]"); *Kealia Water Co. Holdings, LLC v. Plantation Partners Kauai*, LLC, 665 F. Supp. 2d 1189, 1195 (D. Haw. 2009) ("The failure to exhaust administrative remedies is properly considered under a 12(b)(1) motion to dismiss where exhaustion is required.")

4

12(b)(1) motion, a plaintiff bears the burden of proving the existence of the court's subject matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir.1996). A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears. *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968–69 (9th Cir.1981).

"A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Pub. Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (citing *Land v. Dollar*, 330 U.S. 731, 735 & n.4 (1947); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 890-892 (3rd Cir. 1977); *Exchange Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1130-1131 (2nd Cir. 1976)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir.2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*.

"If the challenge to jurisdiction is a facial attack, i.e., the defendant contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made." *Cervantez v. Sullivan*, 719 F.Supp. 899, 903 (E.D.Cal.1989), rev'd on other grounds, 963 F.2d 229 (9th Cir.1992). "The factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Id*.

b. **Fed. R. Civ. P. 12(b)(6)**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A Fed. R. Civ. P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing

the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, "bare assertions...amount[ing] to nothing more than a formulaic recitation of the elements...are not entitled to be assumed true." *Iqbal*, 129 S. Ct. at 1951. A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (citation omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

With these standards in mind, this Court turns to Defendants' challenges to Jones' amended complaint.

**B.   Application**

Defendants challenge Jones' ability to maintain tort claims against Defendants and the sufficiency of Jones' FEHA race harassment claim against Bruegman. Defendants also argue that Jones' retaliation claims under Title VII and FEHA are barred by his failure to exhaust administrative remedies. Defendants do not challenge Jones' Title VII claims for racial discrimination and harassment , Jones' FEHA claims for racial discrimination and failure to prevent racial discrimination, or Jones' FEHA claim for race harassment against MacAlpine and the City.

**1.   Tort Claims**

In his amended complaint, Jones alleges causes of action for negligent hiring, training, and supervision and failure to pay wages against the City and for intentional infliction of emotional distress ("IIED") and general negligence against Defendants. Defendants argue that Jones fails to allege compliance with the Government Tort Claims Act and that Jones' negligence-based claims are barred by the Workers' Compensation Act.

**a.   Government Tort Claims Act**

Before bringing a suit against a public entity, the California Government Tort Claims Act ("GTCA") requires the timely presentation of a written claim and a rejection in whole or part. Cal. Gov. Code § 905; *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir.1995) (citing *Snipes v. City of Bakersfield*, 145 Cal.App.3d 861 (1983)). Depending on the type of claim, the government tort claim must be filed or presented to the public entity no later than six months or one year after the cause of action accrues. Cal. Gov. Code § 911.2. A plaintiff must allege facts demonstrating either compliance with the Government Tort Claims Act requirement or an excuse for noncompliance as an essential element of the cause of action. *State of California v. Superior Court (Bodde )*, 32 Cal.4th 1234, 1243–44 (2004). Failure to allege compliance or an excuse for noncompliance constitutes a failure to state a cause of action and subjects such claims to dismissal. *See Id*.

The GTCA "must be satisfied even in the face of the public entity's actual knowledge of the

circumstances surrounding the claim." *Robinson v. Alameda County*, 875 F. Supp. 2d 1029, 1043-44 (N.D. Cal. 2012) (citing *City of Stockton v. Superior Court*, 42 Cal.4th 730, 738 (2007)). "The purposes of the general claims presentation requirement are to give the governmental entity an opportunity to settle claims before suit is brought, to permit early investigation of the facts, to facilitate fiscal planning for potential liabilities, and to avoid similar liabilities in the future." *Id.* (citing *Snipes*, 145 Cal.App.3d at 869). The requirement is not intended not to eliminate meritorious actions, and the claims statute "should not be applied to snare the unwary where its purpose has been satisfied." *D.K. ex rel. G.M. v. Solano County Office of Educ.*, 667 F. Supp. 2d 1184, 1195 (E.D. Cal. 2009) (quoting *Stockett v. Association of Cal. Water Agencies Joint Powers Ins. Authority*, 34 Cal.4th 441, 446 (2004)).

It is undisputed that Jones did not allege compliance with or excuse from the GTCA requirements in his amended complaint. Jones contends that his DFEH charges and the ensuing EEOC investigation substantially fulfilled the purposes of a government claim such that he should be excused from the claims presentation requirement.

Where a claimant has attempted to comply with the claim requirements but the claim is deficient in some way, the doctrine of substantial compliance may validate the claim if it substantially complies with all of the statutory requirements [] even though it is technically deficient in one or more particulars." *Connelly v. County of Fresno*, 146 Cal. App. 4th 29, 38 (2006). The California Supreme Court has stated that, "to gauge the sufficiency of a particular claim, two tests shall be applied: Is there some compliance with all of the statutory requirements; and, if so, is this compliance sufficient to constitute substantial compliance?" *City of San Jose v. Superior Court*, 12 Cal. 3d 447, 457 (1974). Substantial compliance at least requires the claim to have been properly served and to contain sufficient content. *Garber v. City of Clovis*, 698 F. Supp. 2d 1204, 1215-16 (E.D. Cal. 2010) (citing Cal. Gov. Code §§ 915(a), 910). Jones argues that he substantially complied with the GTCA by "complain[ing] to supervisors," "ma[king] use of Defendant Fresno's internal policies and procedures for reporting harassment and unfair treatment," and filing a charge with the DFEH which led to an EEOC investigation and a finding of a violation of Title VII. Jones alleges no facts as to whether the statutory requirements for service and content were met. In fact, Jones makes no allegations as to his

compliance with any of the provisions of the GTCA.

In support of his contention that lodging complaints with the DFEH and/or EEOC substantially complies with the GTCA, Jones relies on *Garcia v. Los Angeles Unified Sch. Dist.*, 173 Cal. App. 3d 701 (1985). The court in *Garcia* held that the plaintiff did not need to file a government tort claim because she was seeking relief for "unlawful employment practices proscribed under FEHA," and "[a]ctions brought under FEHA have been held exempt from the claim-presentation requirements of the general tort claims act." *Id*. at 710-11. Here, however, Jones alleges causes of action for negligent hiring, training and supervision, general negligence, IIED, and failure to pay wages. FEHA does not apply to these claims. Jones points to language in *Garcia* that the government entity there "had ample notice of appellant's claim through the EEOC and DFEH complaints, and had the opportunity to investigate and resolve the claim through the statutory procedures provided by these agencies." However, the court was merely clarifying the compatibility of its conclusion with the purposes of the general claim presentation requirement. *Id*. at 712. The holding in *Garcia* rests upon the court's finding that her claims are brought under FEHA. *Id*. at 711. As such, *Garcia* is clearly distinguishable, and Jones provides no applicable authorities to support his argument that filing a charge with the DFEH excuses his noncompliance with the claim-presentation requirement in the GTCA.[2]

Because Jones fails to allege compliance with or excuse from the statutory requirements of the GTCA, his claims for negligent hiring, training and supervision, negligence, IIED, and failure to pay wages against the City are DISMISSED WITH LEAVE TO AMEND.[3]

**b.     Claims against Individual Defendants**

Jones also brings claims for IIED and negligence against Bruegman and MacAlpine as individuals.

i. **Negligence**

---

[2] Jones also cites to *Murray v. Oceanside Unified Sch. Dist.*, presumably to the extent that *Murray* discusses *Garcia*. 79 Cal. App. 4th 1338, 1358-60 (2000). However, while *Murray* does quote the dicta from *Garcia*, the court in *Murray* recognizes that Garcia's claims being brought under FEHA was dispositive. *Id*. Further, *Murray* is even less analogous to the instant case than *Garcia* because Murray brought her claims under FEHA and filed three government tort claims prior to bringing suit. *Id*. at 1345.

[3] Because the Court dismisses Jones' tort claims for noncompliance with the GTCA, the Court need not address Defendants' challenges to these claims on other grounds.

9

In his sixth cause of action, Jones alleges that Defendants, including Bruegman and MacAlpine in their individual capacities, breached a duty of care that they owed to Jones. As part of this cause of action, Jones states that "Defendants Bruegman and MacAlpine [. . .] were at all times acting within the course and scope of their employment[.]" California law unambiguously states that, "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal. Gov. Code § 815.2. "Simply stated, a public entity employer is vicariously liable for the torts of its employees committed within the scope of the employment." *M.P. v. City of Sacramento*, 177 Cal. App. 4th 121, 128-29 (2009) (quoting *Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal.4th 291, 296 (1995)). Therefore, even assuming Jones has meritorious claims for negligence against Bruegman and MacAlpine, he cannot maintain his claims against them as individuals because the negligence conduct occurred within the scope of their employment. Accordingly, Jones' sixth cause of action against Bruegman and MacAlpine is DISMISSED WITHOUT LEAVE TO AMEND.

    ii. **IIED**

In his fifth cause of action, Jones alleges that Defendants subjected him to "outrageous words and actions" including "Defendants Bruegman's and MacAlpine's pattern and practice of berating [and] demeaning Plaintiff[.]" Jones further alleges that Defendants' conduct "exceeds the risks inherent in the employment relationship." Unlike in his negligence claim discussed above, Jones appears to assert that Bruegman and MacAlpine were not acting within the scope of their employment when they engaged in conduct that allegedly gives rise to a claim for IIED. "A willful, malicious, and even criminal act may fall within the scope of employment, but only if the act has a causal nexus to the employee's work." *M.P.*, 177 Cal. App. 4th at 129 (quoting *Lisa M*, 12 Cal.4th at 297). "For a causal nexus to exist, the risk of tortious injury must be foreseeable in the sense it is inherent in the working environment or typical of or broadly incidental to the employer's enterprise." *Id*. The Court proceeds with its analysis assuming but not deciding that Bruegman and MacAlpine's alleged conduct giving rise to an IIED claim falls outside of the scope of their employment.

Under California law, the essential elements to state a prima facie claim for IIED are: "'(1)

10

extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (citations omitted). "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.'" *Id*. at 1050-51 (quoting *Potter v. Firestone Tire & Rubber Co*. 6 Cal.4th 965, 1001 (1993)). "Liability for intentional infliction of emotional distress 'does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Id*. at 1051 (quoting Rest.2d Torts, § 46, com. D.). "Behavior may be considered 'outrageous' if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress[.]" *Molko v. Holy Spirit Assn*., 46 Cal.3d 1092, 252 Cal.Rptr. 122, 762 P.2d 46 (1988). With respect to the requirement that the plaintiff show severe emotional distress, the California Supreme Court "has set a high bar." *Id*. "Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Hughes v. Pair*, 46 Cal. 4th at 1050 (quoting *Potter v. Firestone Tire & Rubber Co*. 6 Cal.4th at 1004). Further, in discussing California's IIED requirements, the United States Supreme Court has cautioned that "[t]he potential for undue interference with federal regulation would be intolerable if state tort recoveries could be based on the type of robust language and clash of strong personalities that may be commonplace in various labor contexts." *Farmer v. United Broth. of Carpenters & Joiners of Am., Local 25*, 430 U.S. 290, 305 (1977).

Jones claims that MacAlpine "demonstrated animus" toward him and "treated him differently than other fire fighters" because Jones is African-American. Specifically, Jones alleges that MacAlpine interfered with the issuance of a department vehicle to Jones, rated Jones as "short of standard" on a monthly review, threatened Jones regarding his employment, made racially derogatory remarks targeted at Jones, and expressed his desire to fire Jones, all on account of Jones' race. As a result, Jones suffered "grief, anxiety, worry, frustration, hurt, fear, and otherwise distress." This Court

has previously acknowledged that conduct abusing a position of power such that it gives rise to an IIED claim may occur in an employment relationship. *Clark v. County of Tulare*, 755 F. Supp. 2d 1075, 1091 (E.D. Cal. 2010). Accepting Jones' allegations as true, MacAlpine may be said to have engaged in extreme or outrageous conduct "aris[ing] from an abuse [] of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." Restatement Second of Torts (1965) § 46 Comment e. *See*, *Agarwal v. Johnson*, 25 Cal. 3d 932, 947 (1979) (affirming IIED jury verdict for plaintiff where plaintiff's supervisor used racial epithets) *disapproved of on other grounds*, *White v. Ultramar, Inc.*, 21 Cal. 4th 563 (1999). However, Jones directs the Court to no concrete evidence to establish that he suffered severe or extreme emotional distress as a result of MacAlpine's conduct. *See*, *Lappin v. Laidlaw Transit Inc*., 179 F. Supp. 2d 1111, 1126 (N.D. Cal. 2001) (finding a lack of evidence of severe or extreme emotional distress to support an IIED claim where the a psychologist recommended that the plaintiff not return to work for approximately three weeks after the employment incident at issue). Further, Jones' alleged emotional distress is not "severe." It does not rise to the requisite level of "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Hughes*, 46 Cal. 4th at 1051 (quoting *Potter*, 6 Cal.4th at 1004). *See*, *Lawler v. Montblanc N. Am., LLC*, 11-16206, 2013 WL 135752 at *9, --- F.3d ---- (9th Cir. Jan. 11, 2013) (finding plaintiff's emotional injuries that manifest as "anxiety, sleeplessness, upset stomach, and sometimes muscle twitches" to clearly fall short of severe emotional distress.). "

Jones' IIED claim against Bruegman is even less sufficient. Jones alleges that Bruegman sought and obtained suspension of Jones' EMT certification and placed Jones on unpaid leave following Jones' arrest and criminal charges being filed against Jones but did not pursue similar actions with non-white firefighters. This falls short of constituting "extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress." *Hughes v. Pair*, 46 Cal. 4th at 1051. In addition, there is likewise no concrete evidence of Jones' emotional distress, and Jones' alleged distress does not rise to the level of "emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Id*.

Because Jones failed to sufficiently allege the required elements of IIED under California law, Jones' claims for IIED against MacAlpine and Bruegman in their individual capacities are DISMISSED WITH LEAVE TO AMEND.

**2. FEHA Race Harassment against Bruegman**

In his ninth cause of action, Jones brings claims for racial harassment in violation of FEHA against all Defendants. Defendants argue that Jones fails to sufficiently allege a cause of action for racial harassment against Bruegman.

To establish a prima facie claim for racial harassment under FEHA, a plaintiff must show that (1) he was subjected to verbal or physical conduct because of his race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. *Rohm v. Homer*, 367 F. Supp. 2d 1278, 1285-86 (N.D. Cal. 2005) (quoting *Manatt v. Bank of America, NA*, 339 F.3d 792, 798 (9th Cir.2003)). Occasional, isolated, sporadic, or trivial acts of racial harassment in workplace are not actionable under FEHA. *Etter v. Veriflo Corp*., 67 Cal. App. 4th 457, 466 (1998). "An employee of an entity subject to [FEHA's anti-harassment provisions] is personally liable for any harassment prohibited by [the anti-harassment provisions] that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action." Cal. Gov. Code § 12940(j)(3).

Again, the alleged conduct perpetrated by Bruegman is that he sought and obtained suspension of Jones' EMT certification and placed Jones on unpaid leave following Jones' arrest and criminal charges while not pursuing similar actions with non-white firefighters. This conduct is not properly characterized as harassment. *See*, *e.g*., *Kang v. U. Lim Am., Inc*., 296 F.3d 810, 817 (9th Cir. 2002) (reversing summary judgment for defendant employer for national original harassment where supervisor subjected Korean plaintiff to verbal and physical abuse, including calling him derogatory names, striking him, kicking him, and throwing objects at him, because of supervisor's stereotypical notions as to the abilities of Korean workers.); *Rohm*, 367 F. Supp. 2d at 1286 (denying motion to dismiss racial harassment claim where union members called plaintiff a "stupid white girl," managing employees constantly swore at her and subjected her to improper conduct, and supervisor told her he

13

could justify paying a "Hispanic girl" but not a "white girl."). The California Supreme Court has clarified that "harassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706 (2009) (emphasis in the original). "[H]arassment refers to bias that is expressed or communicated through interpersonal relations in the workplace." *Id*. at 707. Bruegman's alleged actions following Jones' arrest do not indicate that he "subjected [Jones] to unwelcome racial comments or any other harassing conduct" through interpersonal relations that acutely affected the social environment of Jones' workplace. *Thompson v. City Of Monrovia*, 186 Cal. App. 4th 860, 877 (2010). Therefore, this is not the type of conduct that the anti-harassment provisions of FEHA are intended to redress. Cal. Gov. Code § 12940(j).

Jones generally alleges that Defendants "engaged in a pervasive pattern and practice of harassing Plaintiff" based on his race, that the harassment was "severe, pervasive, and occurred with such frequency so as to significantly alter Plaintiff's conditions of employment" and was "objectively hostile and abusive, such that it unreasonably interfered with Plaintiff's work performance." (Doc. 8, ¶ 104). While the Court generally accepts as true the allegations in the complaint in considering a motion to dismiss, the Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services*, 339 F.3d at 767 (citation omitted). Jones makes no allegations as to any harassing conduct perpetrated by Bruegman, other than Bruegman's actions following Jones' arrest, and simply concludes that the harassment was severe, pervasive, hostile, abusive, and unreasonable. These exemplify "bare assertions...amount[ing] to nothing more than a formulaic recitation of the elements...[that] are not entitled to be assumed true." *Iqbal*, 129 S. Ct. at 1951.

Because Jones failed to allege facts to show that Bruegman racially harassed Jones and that the harassment was "sufficiently severe or pervasive" to "create an abusive work environment," Jones' claim for racial harassment in violation of FEHA against Bruegman is DISMISSED WITH LEAVE TO AMEND.

3. **Retaliation**

In his seventh and tenth causes of action, Jones asserts claims for retaliation in violation of FEHA and Title VII, respectively. Defendants argue that Jones' retaliation claims are subject to dismissal for failing to exhaust administrative remedies before commencing a civil action. Jones asserts that he substantially complied with administrative filing requirements.

  **a. FEHA**

"Generally, where an adequate administrative remedy is provided by statute or rule of an administrative agency, relief must be sought from the administrative body and this remedy exhausted before the courts will act." *Williams v. Hous. Auth. of City of Los Angeles*, 121 Cal. App. 4th 708, 722 (2004) (citing *Abelleira v. District Court of Appeal*, 17 Cal.2d 280, 292–293 (1941)). "In the case of retaliatory discrimination for reporting an unlawful employment practice, an administrative remedy is provided by the FEHA." *Okoli v. Lockheed Technical Operations Co.*, 36 Cal. App. 4th 1607, 1612 (1995). While the administrative exhaustion requirement is not expressly written into the statute, the California Supreme Court has stated that, "[t]he FEHA, moreover, by its terms implies exhaustion is required, and we have so assumed." *Rojo v. Kliger*, 52 Cal. 3d 65, 83 (1990), Cal. Gov. Code § 12965. Therefore, under California law, "[t]he requirement of exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts." *Williams*, 121 Cal. App. 4th at 722. "The purpose of FEHA's administrative exhaustion requirement is to ensure DFEH is provided the opportunity to resolve disputes and eliminate unlawful employment practices through conciliation." *Wills v. Superior Court*, 125 Cal.Rptr.3d 1, 12 (2011).

Jones did not include retaliation in either his original or his amended DFEH charge. Jones argues that this Court nonetheless has jurisdiction over his retaliation claims because he substantially complied with administrative filing requirements. This argument is unpersuasive as applied to his FEHA claim. California courts have not applied the doctrine of substantial compliance to administrative exhaustion requirements where state law provides an administrative remedy. *Wright v. State*, 122 Cal. App. 4th 659, 664 (2004) ("Wright contends that he need only substantially comply with the requirement to exhaust administrative remedies. The contention is without merit."). This is because, under California law, administrative exhaustion is not just a requirement but a prerequisite for a court to exercise jurisdiction. As the California Supreme Court, *en banc*, has explained:

> The administrative tribunal is created by law to adjudicate the issue sought to be presented to the court. The claim or 'cause of action' is within the special jurisdiction of the administrative tribunal, and the courts may act only to review the final administrative determination. If a court allowed a suit to be maintained prior to such final determination, it would be interfering with the subject matter jurisdiction of another tribunal.

*Rojo*, 52 Cal. 3d at 83 (quoting 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 234, p. 265).

Because Jones failed to show that he exhausted administrative remedies for his FEHA retaliation claim, his seventh cause of action is DISMISSED WITHOUT LEAVE TO AMEND.

### b. Title VII

Title VII's provisions, unlike those of FEHA, expressly grant district courts jurisdiction over claims brought under the statute. 42 U.S.C. § 2000e-5(f) ("Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter."). Administrative exhaustion as applied to claims brought under Title VII, is not a jurisdictional prerequisite.[4] As the United States Supreme Court has stated, "Congress had approved the Court of Appeals cases that awarded relief to class members who had not exhausted administrative remedies before the EEOC. It is evident that in doing so, Congress necessarily adopted the view that the provision for filing charges with the EEOC should not be construed to erect a jurisdictional prerequisite to suit [under Title VII] in the district court." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 397 (1982). *See also*, *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001) ("A number of our circuit cases have also held that the administrative exhaustion requirements under Title VII are not jurisdictional but are conditions precedent to filing an action which a defendant may waive or be estopped from asserting."). However, "substantial compliance with the presentment of […] complaints to an appropriate administrative agency *is* a jurisdictional prerequisite." *Sommatino*, 255 F.3d at 708. (emphasis in the original). "The jurisdictional scope of a Title VII claimant's court action depends upon the scope of both the EEOC

---

[4] See *Rojo*, 52 Cal. 3d at 83 for the California Supreme Court's analysis of Cal. Gov. Code § 12965(b), which outlines what is required before a party may file a civil action under FEHA, and concluding that, "the right-to-sue letter is a prerequisite to judicial action." The California Supreme Court further notes that "[r]elying on such statements, other courts have held that exhaustion of FEHA administrative remedies is a prerequisite to judicial relief on a statutory cause of action." *Id*.

16

charge and the EEOC investigation." *Paige v. State of Cal.*, 102 F.3d 1035, 1041 (9th Cir. 1996) (quoting *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994), *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990)). The district court has jurisdiction over a Title VII claim if "that claim fell within the scope of the EEOC's actual investigation or an EEOC investigation which [could] reasonably be expected to grow out of the charge of discrimination." *Id*.

Jones contends that he substantially complied with administrative filing requirements for his retaliation claims by filing Charges of Discrimination with the DFEH such that the Court may exercise jurisdiction over the claims even though neither DFEH charge included or mentioned retaliation. Because Jones' DFEH charges only claimed harassment and different treatment, the Court must decide whether his current retaliation claim is reasonably related to the DFEH charges. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003). In *Vasquez*, upon which Jones heavily relies, the Ninth Circuit reasoned that the plaintiff had exhausted his administrative remedies with regard to retaliation by his supervisor because, "[w]hile the EEOC charge does not contain the relevant legal theory of retaliation, it does contain the relevant factual allegations." *Id*. at 645. "[Vasquez's] EEOC charge alleges that [his supervisor] harassed Vasquez and that he was transferred out of turquoise cottage, the same acts specified as retaliation in his claim." *Id*. at 645-46. Therefore, the court had jurisdiction to hear Vasquez's retaliation claim even though it was not included in his EEOC charge. *Id*. at 646. Here, however, Jones provides no guidance in either his DFEH charges or his current allegations as to how he was retaliated against or which alleged incidents were instances of retaliation. In his DFEH charges, Jones stated that he had been treated differently by management personnel "including but not limited to, discipline, threats of discharge, removal of EMT license, and denial of employee benefits," and that he believes he had been "harassed and treated differently in the terms and conditions of employment because of [his] race." In both of his retaliation causes of action, under FEHA and Title VII, Jones simply states that the City and Does "intentionally, willfully, and without justification retaliated against Plaintiff for expressing opposition to workplace discrimination[.]" Therefore, it is unclear whether a claim of retaliation would have "grown out of the charge[s]" as there is no conduct "specified as retaliation" in his current claims, and the charges may or may not "contain the relevant factual allegations." *Vasquez*, 349 F.3d at 645-46.

Moreover, even assuming Jones substantially complied with the administrative exhaustion requirement, he nonetheless fails to state a claim for retaliation under Title VII. "To make out a prima facie case of retaliation, [the plaintiff] must establish that he undertook a protected activity under Title VII, his employer subjected him to an adverse employment action, and there is a causal link between those two events." *Id*. at 646. The Ninth Circuit has adopted the EEOC standard from its compliance manual and held that "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Id*. (quoting *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir.2000)). The EEOC manual speaks of this as "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Id*. (quoting *Ray*, 217 F.3d at 1242-43, EEOC Compliance Manual § 8 "Retaliation" ¶ 8008 (1998)). Jones made his first internal complaint in a letter to Bruegman on or around December 5, 2006. He then made two more internal complaints as well as filed charges with the DFEH in 2010. To the extent Jones provides dates in his amended complaint, the bulk of the alleged conduct occurred between 2006 and 2010. However, Jones makes no allegations to show a causal link between his December 2006 complaint and any subsequent adverse employment actions. In fact, the incident most likely to be considered an adverse employment action, the suspension of Jones' EMT license, occurred nearly three years after Jones' December 2006 complaint, and Jones "has not provided evidence of surrounding circumstances that show a retaliatory motive." *Id*. at 646. Jones also fails to provide evidence showing a retaliatory motive in any alleged incident that may have occurred after he made internal complaints and filed DFEH charges in 2010.

Because Jones fails to show a causal link between his protected activities and any adverse employment action taken against him, regardless of whether Jones substantially complied with the administrative exhaustion requirement, Jones' tenth cause of action for retaliation in violation of Title VII is DISMISSED WITH LEAVE TO AMEND.

**4.   Leave to Amend**

Jones requests leave to amend his complaint "to cure any defect." Defendants argue that leave to amend should not be granted because Jones already has had a chance to amend his complaint to cure these defects following Defendants' prior motions to dismiss on these issues. However, Jones

filed his first amended complaint without an opinion from this Court on Defendants' prior motions to dismiss. The Ninth Circuit has instructed that, to the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d at 247. Therefore, the Court GRANTS Jones leave to further amend his complaint to cure the defects in his allegations (1) with regard to compliance with the GTCA, (2) to state a claim for IIED against Bruegman and MacAlpine as individuals, (3) to state a claim for harassment in violation of FEHA against Bruegman, (4) with regard to compliance with administrative exhaustion for his Title VII retaliation claim, and (5) to state a claim for retaliation in violation of Title VII.

However, because Jones can allege no facts to show that he did in fact exhaust administrative remedies for his FEHA retaliation claim, leave to amend that claim is DENIED. Likewise, because Jones cannot maintain a claim for negligence against Bruegman and MacAlpine as individuals where they were acting within the scope of employment, leave to amend that claim is DENIED.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. DISMISSES WITH LEAVE TO AMEND the first amended complaint's fourth cause of action for racial discrimination under FEHA, fifth cause of action for IIED, sixth cause of action for negligence against the City and Does, eighth cause of action for failure to pay wages, ninth cause of action for harassment under FEHA against Bruegman, and tenth cause of action for retaliation under Title VII; and

2. DISMISSES WITHOUT LEAVE TO AMEND the first amended complaint's sixth cause of action for negligence against Bruegman and MacAlpine as individuals and seventh cause of action for retaliation under FEHA.

Jones shall have ***one opportunity*** to file and serve a second amended complaint in an attempt to cure the deficiencies described herein in the dismissed claims for which leave to amend is granted. Any such amended complaint shall be filed and served within 20 days of electronic service of his order.

/ / /

/ / /

Jones is not afforded leave to alter any other aspect of first amended complaint. Defendants no later than 20 days after service of the second amended complaint shall file a response thereto.

IT IS SO ORDERED.

Dated:   **March 1, 2013**                              **/s/ Lawrence J. O'Neill**
                                                                                         UNITED STATES DISTRICT JUDGE